IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| PAMELA JEAN GARMON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 04-PT-1137-M |
| | ) |
| LIBERTY LIFE ASSURANCE CO. | ) |
| OF BOSTON, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This cause comes on to be heard upon plaintiff Pamela Jean Garmon's ("Garmon") Motion to Remand, filed on June 14, 2004.

### FACTS AND PROCEDURAL HISTORY

Garmon is a citizen of the State of Alabama. Defendant Liberty Life Assurance Company of Boston ("Liberty Life") is a corporation organized and existing under the laws of the State of Massachusetts, with its principal place of business in the State of Massachusetts.

On April 21, 2004, Garmon filed this action in the Circuit Court of Etowah County, Alabama, alleging that Liberty Life breached a long-term disability insurance contract with plaintiff, acted in bad faith by refusing to pay benefits, and anticipatorily repudiated said contract. According to defendant, plaintiff subsequently sent the Summons and Complaint to Liberty Life via certified mail addressed to "Liberty Life Assurance Company of Boston, P.O. Box 1525, Dover, New Hampshire, 03821."[1] Defendant alleges that an employee of Pitney-Bowes Management Service

---

[1] Plaintiff has not disputed this allegation.

received the certified mail card at the U.S. Post Office in Dover, New Hampshire, located at 133 Washington Street 03820 and retrieved the Summons and Complaint from the U.S. Post Office in Dover on April 30, 2004. *See* Affidavit of Donald Innis, para. 3. The return certified mail card shows April 30, 2004 as the date of delivery, and the docket sheet of the Circuit Clerk of Etowah County noted that service had been accomplished upon Liberty Life on April 30, 2004.

On June 3, 2004, Liberty Life filed a notice of removal in this court, asserting the existence of both diversity and federal question jurisdiction. In its notice of removal, Liberty Life asserted that Liberty Life was served with the Summons and Complaint by certified mail on May 4, 2004. However, in Liberty Life's opposition to remand, defendant appears to concede that service (albeit allegedly improper service) did occur on April 30, 2004.

## STANDARD FOR REMAND

Federal courts are courts of limited jurisdiction. *See Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001). Therefore, federal courts have power to hear only those cases that they have been authorized to hear by the Constitution or by Congress. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The limited nature of federal jurisdiction has caused the Eleventh Circuit to favor remand of removed cases where federal jurisdiction is not absolutely clear. *See Russell Corp.*, 264 F.3d at 1050. The removal statute is to be construed narrowly with doubt construed against removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941).

A case may be removed to federal court only if the case could have been brought originally in federal court pursuant to the court's diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a). However, diversity will not support removal jurisdiction if any properly joined defendants

are citizens of the state in which the suit was originally filed. *See* 28 U.S.C. § 1441(b). The determination of whether federal jurisdiction exists must be made on the face of the plaintiff's well-pleaded complaint. *Pacheco De Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). An anticipated or even inevitable federal defense generally will not support removal. *Id.* at 1373 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392-93 (1987)). The burden of establishing federal jurisdiction is placed on the defendant, with all doubts resolved in favor of remand, *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). When multiple defendants are involved, all defendants must consent to removal. *Russell Corp.*, 264 F.3d at 1050.

## ARGUMENTS

### I.  Motion to Remand

Plaintiff asserts that Liberty Life's notice of removal was not timely filed and that defendant was served on 4/30/04 instead of 5/4/04 as alleged. Garmon attaches the following evidence regarding date of service: (1) a service notice from the Circuit Court of Etowah County; (2) a Certified Mail Return Card showing date of delivery as 4/30/04; and (3) an Alabama SJIS computer printout showing date of service as 4/30/04.

### II.  Defendant's Response

Liberty Life asserts that plaintiff's service of the complaint upon it was improper and thus the motion to remand should be denied.[2]

According to Liberty Life, plaintiff's mailing of the complaint to Liberty Life's post office

---

[2] Liberty Life asserts that the Pitney-Bowes courier retrieved the summons and complaint on April 30, 2004, from the U.S. Post Office from among thousands of pieces of mail addressed to several different Liberty entities. As a result, defendant alleges, "appropriate Liberty Life personnel did not even receive a copy of the filed Summons and Complaint until May 4, 2004."

3

box via certified mail did not comply with the strict requirements of Rules 4.2(b)(1)(A)[3] and 4(c)(6)[4] of the Alabama Rules of Civil Procedure.[5] "[S]ervice of process, to be valid, must be in compliance with both Rule 4.2(b)(1) and Rule 4(c)(6)." *See Gen. Motors Corp. v. Plantation Pontiac*, 762 So. 2d 859, 861 (Ala. 1999). While a showing of the certified mail return receipt and the circuit court clerk's docket sheet notation creates a presumption of valid service under Rule 4.2(b)(1)(A), *see Insurance Management & Administration, Inc. v. Palomar Insurance Corporation*, defendant relies on *Northbrook Indemnity Co. v. Westgate, Ltd.,* 769 So. 2d 890 (Ala. 2000), for the assertion that

---

[3] Rule 4.2(b)(1)(A) reads:

(b) **Methods of Out-of-State Service**. All service of process outside of this state shall be made as set forth below except when service by publication is available pursuant to Rule 4.3 Service outside of this state under this rule shall include service by certified mail and delivery by a process server; and each method shall be deemed to confer in personam jurisdiction. Unless otherwise requested or permitted by these rules, service of process outside this state shall be made by certified mail.

(1) *Certified Mail.*

(A) How Served. The clerk shall place a copy of the process and complaint or other document to be served in an envelope and shall address the envelope to the person to be served at that person's last known address with instructions to forward. The clerk shall affix adequate postage and place the sealed envelope in the United States mail as certified mail return receipt requested with instructions to the delivering postal employee to show to whom delivered, date of delivery, and address where delivered. When the person to be served is an individual, the clerk shall also request restricted delivery, unless otherwise ordered by the court. The clerk shall forthwith enter the fact of mailing on the docket sheet of the action and make a similar entry when the return receipt is received.

[4] Rule 4(c)(6) reads:

(c) **Upon Whom Process Served.** Service of process, except service by publication as provided in Rule 4.3, shall be made as follows:

(6) *Corporation.* Upon a corporation, either domestic or foreign, by serving the agent authorized by appointment or by law to receive service of process or by serving the corporation by certified mail at any of its usual places of business or by serving an officer or an agent of the corporation.

[5] Alabama law requires strict compliance with Rule 4. *See Sims v. State ex rel. Alabama Commission on Higher Educ.*, 582 So. 2d 1137 (Ala. 1991).

Incidentally, both rules have been amended effective August 1, 2004. The court notes that such amendments do not affect its decision here.

4

the same presumption does not extend to Rule 4(c)(6).

Thus, defendant argues, to properly serve a foreign corporation via certified mail, an Alabama plaintiff must show not only evidence of a properly executed and returned certified mail receipt pursuant to Rule 4.2(b)(1)(A) but also evidence that the complaint was served "by certified mail at any of [the corporation's] usual places of business," "by serving the agent authorized by appointment or by law to receive service of process," or "by serving an officer or an agent of the corporation" pursuant to Rule 4(c)(6).

First, defendant contends, plaintiff did not serve the complaint at any of Liberty Life's usual places of business. Defendant asserts that plaintiff's complaint was sent via certified mail to a post office box used to receive mail addressed to both Liberty Life, its parent company, Liberty Mutual Insurance Company, and a number of other Liberty entities. *See* Innis Aff., para. 5. According to defendant, plaintiff chose to send the complaint to P.O. Box 1525 despite the fact that Liberty Life provided the physical street address of its physical office on the front page of the Group Disability Income Policy at issue in this lawsuit. *See* Def. Ex. B.[6]

P.O. Box 1525 is physically located at the U.S. Post Office, defendant argues, which is clearly not defendant's "usual place of business." The Alabama Supreme Court has held that an address does not qualify as a "usual place of business" if the party (a) has no employees at that address, (b) does not conduct business at that address, and (c) has not authorized employees of the entity located at that address to conduct business on its behalf.[7] *See Northbook, supra.*[8]

---

[6] The front page of the attached policy reads: "Signed at Liberty's Home Office, 175 Berkeley Street, Boston, Massachusetts, 02117."

[7] Specifically, the *Northbrook* court stated:

Moreover, Liberty Life argues, the Alabama Supreme Court has found a post office box used by a defendant to receive payments to not constitute a "usual place of business." *See Plantation Pontiac* at 862. In *Plantation Pontiac*, the dealership attempted to serve defendant GM by certified mail at a post office box address to which the dealership remitted payments. The post office box address corresponded to a lock box at First Chicago Bank, where payments were sent for deposit. Applying the *Northbrook* analysis, the Alabama Supreme Court held that the lock box did not satisfy the "usual place of business" requirement of Rule 4(c)(6).[9]

Furthermore, defendant contends, Liberty Life does not have employees at the post office to which plaintiff mailed the complaint, does not conduct business there, and has not authorized

---

> It is undisputed that when service of process was attempted, Northbrook had no employees at 51 West Higgins Road and it had ceased doing business at that address. Moreover, nothing in the record indicates that any of Allstate's agents or employees were authorized to transact business on Northbrook's behalf at that address. Accepting and forwarding mail is not doing business. *See Paramount Packaging*, 190 F.Supp. at 180. In short, the record contains no substantial evidence to support a finding that 51 West Higgins Road was one of Northbrook's usual places of business at the time of the attempted service of process. Thus, the attempted service on Northbrook at that address did not comply with Rule 4(c)(6), Ala. R. Civ.P., and the default judgment entered against Northbrook is void.

[8] In *Northbrook*, defendant points out, plaintiff had served its complaint to the defendant's former place of business. While defendant had an agreement with a courier service to pick up mail at the former address and deliver it to the present business address, the Alabama Supreme Court held that such an agreement did not transform the former address into a "usual place of business" for Rule 4(c)(6) purposes.

[9] The *Plantation Pontiac* court reasoned:

> In many ways, this case is quite similar to *Northbrook Indemnity*. GM had its dealerships remit payments to a post-office-box number that corresponds to a "lock box" at First Chicago Bank. Bank employees transferred the remitted payments to an account at the bank. Those employees were authorized only to transfer the payments sent to the "lock box" to the appropriate account. GM did not have any agreements with the bank about what to do with correspondence sent to the "lock box." In light of our supreme court's decision in *Northbrook Indemnity*, we conclude that the "lock box" address to which the summons and complaint were sent was not a usual place of business for GM and that service at the "lock box" did not satisfy the "usual-place-of-business" requirement of Rule 4(c)(6).

6

employees of the post office to conduct business on its behalf. Rather, Liberty Life alleges, defendant and its related entities have contracted with Pitney Bowes Management Services ("Pitney Bowes") for courier services to pick up mail at the post office and have it delivered to defendant. Defendant again quotes *Northbrook*: "Accepting and forwarding mail is not doing business."

Second, defendant contends, plaintiff did not serve the complaint upon employees or agents of Liberty Life or upon Liberty Life's registered agent.[10] In order to be an "authorized agent for receipt of service of process," defendant contends, there must be clear evidence that the corporation had a high degree of control over the employee in question. *See Plantation Pontiac* at 861.[11] In that case, the Alabama Supreme Court rejected plaintiff's argument that employees of a bank which contained the defendant's post office box were "agents authorized to receive service." *Id.* at 863. While finding the bank employees to be special agents of defendants for the limited purpose of accepting and depositing payments, the court held such authority "does not rise to the level necessary to make them authorized agents for receiving service of process."

In the instant case, Liberty Life insists, the reasoning of *Plantation Pontiac* applies with greater force, since Liberty Life does not authorize the post office to conduct business on its behalf or authorize contract mail couriers like Mr. Innis to receive service of process.[12]

---

[10] According to defendant, the registered agent for Liberty Life for purposes of service of process it The Corporation Company, 2000 Interstate Park, Suite 204, Montgomery, Alabama, 36109. *See* www.aldoi.gov.

[11] The *Plantation Pontiac* court discussed the reasoning of *Ex Parte Volkswagenwerk Aktiengesellschaft*, 443 So. 2d 880, 884 (Ala. 1983), in which the Alabama Supreme Court held that a subsidiary corporation could be an authorized agent for service of process for the parent corporation if the plaintiff presented "'proof of a high degree of control' by the parent corporation over the subsidiary."

[12] In his affidavit, Innis alleges that his job responsibilities are limited to retrieving and sorting mail for Liberty's entities located at 100 Liberty Way, Dover, New Hampshire, 03829. Mr. Innis is not employed by Liberty Life.

7

Finally, Liberty Life contends, plaintiff's improper service failed to trigger the thirty-day period for removal under 28 U.S.C. section 1446(b). Defendant relies on *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) for its assertion that the statutory thirty day period for removal does not begin until the defendant is formally served; informal service by providing a copy of the complaint does not trigger the thirty-day period. In *Murphy Brothers*, a complaint was filed in Alabama state court, there was no service at that time, three days later a "courtesy copy" of the file-stamped complaint was faxed to one of defendant's vice presidents, and then official service by certified mail occurred. So, thirty days after service but forty-four days after receiving the faxed courtesy copy, defendant filed a notice of removal to federal court. In analyzing the timeliness of removal, the *Murphy Brothers* court stated:

> The question presented is whether the named defendant must be officially summoned to appear in the action before the time to remove begins to run. Or, may the 30-day period start earlier, on the named defendant's receipt, before service of official process, of a "courtesy copy" of the filed complaint faxed by counsel for the plaintiff?
>
> We read Congress' provisions for removal in light of a bedrock principle: An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process. Accordingly, we hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, "through service or otherwise," after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.

According to defendant, *Murphy Brothers* disposes of the motion to remand. Defendant further contends that it would be inequitable to order remand, since plaintiff's failure to adhere to Rule 4(c)(6) allegedly "caused a substantial delay in Liberty Life's receipt of the Complaint, and

8

prejudiced Liberty Life's procedural rights."

### III. Plaintiff's Reply

First, Garmon repeats its assertion that Liberty Life filed a notice of removal more than thirty days after notice of service in violation of 28 U.S.C. section 1446(b). Second, Garmon asserts, Liberty Life waived its claim of "improper service" by filing an answer and removing the case to federal court. Liberty Life does not contest the date of actual service, i.e., 4/30/04, Garmon argues, but rather asserts improper service

According to Garmon, *Murphy Brothers* is distinguishable. While the *Murphy Brothers* defendant received a faxed copy of the complaint, Garmon argues, here defendant received a summons and complaint and never contested service.

### CONCLUSION OF THE COURT

The court will deny the motion to remand based on defendant's assertions recited above. If, at any time, the plaintiff can offer proof that the defendant actually received the summons and complaint on April 30, 2004, the court will reconsider.

This the _21st_ day of July, 2004.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**